## DANIEL F. EMERY *vs.* JOSEPH HOBSON.

### *Unstamped receipt admitted in evidence.*

An instrument not stamped as required by the acts of congress of the United States is properly admissible in evidence at a trial before the courts of this State, where the maker testifies that the stamp was omitted without any fraudulent intent on his part.

ON EXCEPTIONS.

ASSUMPSIT. The declaration contained only the count for money had and received. Under it the plaintiff offered in evidence a receipt for $1,321.77, dated October 3, 1870, signed by the defendant, to the admission of which the defendant objected, because it was not stamped, as required by the laws of the United States; but Mr. Hobson, being called by the plaintiff, testified that the omission of the stamp was without any fraudulent intent on his part, and the court then received the paper in evidence, overruling the defendant's objection, to which he excepted.

*Edwin B. Smith*, for the defendant.

The question in this case is not whether or not the instrument is valid, but whether it was properly received in evidence without being stamped. A deed may be perfectly valid to convey an estate, and yet not receivable in evidence until its execution is proved by the subscribing witness. The act passed at the first

session of the thirty-ninth congress, c. 184, approved July 13, 1866, § 9, (first section so numbered; this act having two sections bearing that number) found in 14 U. S. Stats. at Large, pp. 143, 144, in force when this cause was tried, so far as the point here raised is concerned, provides, "That hereafter no deed, instrument, document, writing or paper, required by law to be stamped, and which has been signed or issued without being duly stamped, or with a deficient stamp, or any copy thereof, shall be recorded, or used as evidence in any court, until a legal stamp or stamps, denoting the amount of tax, shall have been affixed thereto, as prescribed by law."

Subsequent legislation diminished the fine for not affixing a stamp, but did not change this part of the section. And the latest act passed by the forty-second congress, c. 315, § 36, and approved June 6, 1872, found in 17 U. S. Stats. at Large, 257, repealing the laws requiring stamps almost *in toto*, did not modify this language, nor contemplate that unstamped instruments, made while stamps were required, should be received but did provide for their being stamped under the authority of a government official. Not only must a stamp be affixed, but its affixion must be in the manner "prescribed by law" to render the paper admissible.

This court has never, in any reported opinion, expressed itself as to whether or not these provisions of the U. S. Statutes will be held applicable as rules of evidence in the State courts of Maine. In *Angier* v. *Smalley*, 58 Maine, 426, there is an express waiver of this point, as the case did not require its determination, but reference is made to *Carpenter* v. *Snelling*, 97 Mass., 452, where it is held that they are not binding upon the State courts. The logical result of this last case was that the same court were obliged also to say that the provision as to recording unstamped instruments only applied to records kept by federal officials. *Moore* v. *Quirk*, 105 Mass., 49, 53. The courts of many other States have taken similar positions; but, in every instance that has come to our attention, have briefly announced this result, without entering into any discussion of the question; while those holding the con-

trary doctrine, recognizing the supremacy of the acts of congress, and their applicability to all the courts of the country, are founded in better reason, and have resulted from a more thorough investigation. See especially the able opinion of the supreme court of Pennsylvania (per Agnew, J.) in *Chartiers* v. *McNamara*, 72 Penn. St. R., 278; *Cole* v. *Bell*, 48 Barb., 104; *Howe* v. *Carpenter*, 53 Barb., 382; *Miller* v. *Larmon*, 38 Howard's Prac. Rep., 417; *Hugus* v. *Strickler*, 19 Iowa, 413; *Botkins* v. *Spurgeon*, 20 Iowa, 598; *Byington* v. *Oak*, 32 Iowa, 488; *Mobile* v. *Edwards*, 46 Ala., 267; *Conie* v. *Billiu*, 23 La. Ann., 250.

First. Did congress intend this clause to apply to the State courts?

Second. Could it constitutionally carry such intention into effect?

The answer to both these inquiries must be found, it is true, in the act itself and in the constitution; but both are to be examined with the light of history, and a consideration of the object intended to be accomplished and the circumstances attending these efforts. We may construe any act by its declared purpose and our knowledge of the exigency out of which it arose. Its object is declared in the title, (which it is proper to notice; Dwarris on Stats., 501; *Rex* v. *Greenop*, 3 T. R., 133; *U. S.* v. *Fisher*, 2 Cranch, 386; *U. S.* v. *Palmer*, 3 Wheat, 610.) "To provide internal revenue to support the government, to pay interest on the public debt, and for other purposes." This was the intention of congress; its "acts" must be so construed as to carry it out. Sedgwick on Stats. and Const. Law, 229, *et seq*; Cooley's Const. Lim., 55, *et seq*; *Minor* v. *Mechanics' Bank*, 1 Peters, 64; *Winslow* v. *Kimball*, 25 Maine, 493; and authorities *passim*.

Two inquiries arise. First, what is the object to be attained? Second, what are the means to be employed? Sedgwick on Stats. and Const. Law, 228, 229, &c. If we must seek to discover the legislative design, in order to accomplish it, it would be a gross dereliction of duty to thwart it, if known. *The Emily & Caroline*, 9 Wheat., 381; *U. S.* v. *Wiltberger*, 5 Wheat., 95; *Cook* v.

*Hamilton Co.*, 6 McLean, 112 ; *State* v. *Stinson*, 17 Maine, 157. But it must be so taken as most beneficially to effectuate its purpose. 1 Bl. Com., 88 ; 1 Bacon's Ab., 7-9 ; *Cumming* v. *Fryer*, 1 Dudley, (Geo.) 182.

The particular clause under consideration was intended to prevent frauds upon the revenue, and should be so construed as to best effectuate that laudable purpose, taking the words in their ordinary sense. Opinion, 7 Mass., 524 ; *Maillard* v. *Lawrence*, 16 Howard, 251 ; *U. S.* v. *Bassett*, 2 Story, 389. So as to do substantial justice. *Russell* v. *Smyth*, 9 Mees. & Wels., 818. Or, as the supreme court of the United States say : A strict construction "is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend." *U. S.* v. *Wiltberger*, 5 Wheat., 95 ; *Faw* v. *Marsteller*, 2 Cranch, 24 ; *U. S.* v. *Coombs*, 12 Peters, 72, 80, &c.

The declared purpose here was to raise revenue to support the government, and to pay interest on its debt, &c. The emergency which called it forth the court cannot fail to notice. *Preston* v. *Browder*, 1 Wheat., 115 ; *Aldridge* v. *Williams*, 3 Howard, 24. This desired end could be best accomplished—even if attainable at all in any other way—by attaching invalidity everywhere to an unstamped instrument. That such was the design is demonstrable by reference to other parts of the act—making it "its own best expositor." *Pennington* v. *Coxe*, 2 Cranch, 33, 55.

It has been assumed by the courts of Massachusetts, and of other States making similar decisions, as a reason for their construction of this act, that congress would not attempt to pass any law that would affect proceedings by State tribunals or State officials ; thus arguing from presumptions of comity and considerations of political relations against the express language of the statute itself. But in Maine, Massachusetts, and probably every other State, probate courts, by whatever name known, are courts of record, with a judge or surrogate, register or clerk, and having a seal by which it authenticates its records and documents issued by its authority.

As to matters within their jurisdiction, these courts are entitled to all the respect and consideration due to any tribunal. The writs and processes issued by other courts are no more exempted from national taxation than those that bear the sanction of probate courts. These latter issue "letters of administration." R. S., c. 63, § 4. Yet these very documents, which issue as completed instruments, and to accomplish a special purpose for the particular estates to which they relate—instead of being signed in blank and purchased in quantity, as writs are—are expressly charged with a stamp duty by the first of the series of tax acts, and continued in every succeeding enactment, 12 Stats. at Large, 483 ; 13 Stats. at Large, 300 ; 14 Stats. at Large, 475.

The administrators and executors, charged by these courts with the official duty of caring and accounting for the estates entrusted to them, of whose position and relation to the court the documents above referred to are the evidence and constitute their commissions, are as much the officers of that court, in performing the functions by it devolved upon them, as any recording officer is a State official; hence, a sale by one of these trustees, under license of court, or *virtute officii*, are held to be judicial sales. *Bashore* v. *Whisler*, 3 Watts, 492 ; *Williamson* v. *Berry*, 8 Howard, 547. Yet this stamp act compels these officers of a State court, acting (as it says) in their "fiduciary capacity" to the performance of certain duties, to aid in carrying out the general purposes of the act ; i. e., the full equal and prompt collection of the taxes imposed. 12 U. S. Stats. at Large, 475, 485-487. The constitution of Maine, art. 6, § 5, provides for the appointment of notaries public, among the judicial officers of the State ; whose unsworn statement, authenticated by his seal, is admitted in evidence, because it is the record of official action. R. S., c. 32. Yet a tax is imposed upon every protest "whether protested by a notary public or by any other officer, who may be authorized by the law of any State or States to make such protest. It dictates to the State official directly that he shall place a stamp upon a paper issued by him in his official capacity.

A negative argument can be drawn from other clauses of the statute. The exemption from tax of the certificate of the record of a deed, and (by the amendatory act of 1866, c. 184, § 9) of certain documents issued by State, county and municipal authorities, implies the power to impose one. In view of these provisions it is absurd to say congress did not intend the law to be regarded in all courts. Any other construction leads to infinite mischief, injustice and hardship. One holding a note against a fellow citizen of the same State can sue and recover upon an unstamped note; if they reside in different States the defendant can defeat the action by a transfer to the federal court. Success or failure does not depend on the laws of the land but on different rulings of tribunals sitting, perhaps, within a few rods of each other ; and this in relation to commercial paper, in regard to which Lord Mansfield and Judge Story adopt the language of Cicero; *"non erit alia lex Romæ alia Athenis, alia nunc, alia post hac, sed et apud omnes gentes, et omni tempore, una eademque lex obtinebit."* *Luke* v. *Lyde*, 2 Burrows, 883 ; *Swift* v. *Tyson*, 16 Peters, 19.

As Judge Agnew says in *Chartiers* v. *McNamara*, 72 Penn. St. R., 282: "We come now to the question of power, if indeed there can be any question in a matter so plain." The grounds for an affirmative answer are well stated in that case. Congress is authorized "to lay and collect taxes," &c., . . . . . that "shall be uniform throughout the United States," and "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers," &c. U. S. Const., art. 1, § 8, clauses 1 and 18.

"The government is to pay the debt of the union, and must be authorized to use the means which appear to itself most eligible to effect that object." Per Marshall, C. J., in *U. S.* v. *Fisher*, 2 Cranch, 396. It is not confined to those of absolute necessity. *M'Culloch* v. *Maryland*, 4 Wheat., 316. In *Osborn* v. *U. S. Bank*, 9 Wheat., 895-6. Johnson, J., said: "I will not undertake to define the limits within which the discretion of the legislature of the union may range, in the adoption of measures for executing their constitutional powers." It is very possible that in the choice

of means to carry their powers into effect, they may have assumed a latitude not foreseen at the adoption of the constitution.    For example, *in order to collect a stamp duty, they have exercised a power over the general law of contracts*: . . . and all this, being within the range of their discretion, is aloof from judicial control, while unaffectedly exercised for the purposes of the constitution. Nor, indeed, is there much to be alarmed at in it, while the same people who govern the States can, where they will, control the legislature of the United States."

This control over the general law of contracts within the United States, by whatsoever tribunal administered, was assumed by congress at an early period of our national existence.    The thirteenth section of the act approved July 6, 1797, contains a provision identical with the one under consideration.    1 U. S. Stats. at Large, 527.    See the several statutes upon this subject enumerated in note *a* upon this page.

It was not assumed, however, for the purpose of affecting contracts, as the end sought, but only as an incident in the accomplishment of the design, authorized by the constitution, of providing revenue for public exigencies.    As Judge Agnew remarks, this "is not a rule for the regulation of evidence, but is a disqualification attached to the document, &c., . . . a provision to enforce the payment of the tax of the most necessary kind, and binding on all courts," &c.    *Chartier* v. *McNamara*, cited *ante*.

This has been adopted in England as the most efficient method of collecting revenue, and compelling compliance with the law, the objection of the want of a stamp being properly raised so soon as the instrument is offered in evidence.    1 Chitty on Pl., 304 ; *Fields* v. *Wood*, 7 A. & E., 114; *Campbell* v. *Wilcox*, 10 Wallace, 423.

The subject matter being one on which congress can legislate, it may use all necessary and proper means to enforce obedience, as well on the part of States and their officials, as by private individuals.    The rules of evidence, as administered by the State courts, are but the law of the State, as its statutes are ; and if they conflict

with proper federal legislation both must equally yield. The courts of a State, indirectly representing its people, are entitled to no more regard than its legislature directly chosen by the people. It is "the laws of a government declared to be supreme" operating upon "those of a government which, when in opposition to those laws, is not supreme." *McCulloch* v. *Maryland*, 4 Wheat., 436; *Cohens* v. *Viginia*, 6 Wheat., 264, 414, 416, *et seq.* It is only requisite that the means be "*bona fide*, appropriate to the end." 2 Story on Const., 142, § 1253. In which case, the franchises of the State may be taxed out of existence. *Veazie Bank* v. *Fenno*, 8 Wallace, 548.

To secure debts due the United States, the order of the distribution laws of the States are disturbed. *U. S.* v. *Fisher*, 2 Cranch., 358. A special tax is imposed upon business carried on in Maine, under direct authority of the State. R. S., c. 27. *Licence tax cases*, 5 Wallace, 462, 476, *et seq.*

As a regulation of commerce, it requires the record of conveyances of vessels in a different place from that specified under State laws. *Gibbons* v. *Ogden*, 9 Wheat., 3; *Steamship Company* v. *Portwardens*, 6 Wallace, 31; *Sinnott* v. *Davenport*, 22 Howard, 242; and holds the mortgage so recorded, but not where our laws require, good against everybody. *Blanchard* v. *Martha Washington*, 1 Clifford, 463; *White's Bank* v. *Smith*, 7 Wallace, 646; *Aldrich* v. *Ætna Ins. Co.*, 8 Wallace, 491. The decision of the 'State court, that it could properly receive such document only when recorded conformably to its laws, was overruled. Under its prerogative "to establish post offices," &c., congress imposes penalties on mail robbers, thefts of letters, deposit of obscene matter in the mails, &c.

The sum of it all is, then, that an act of congress is not unconstitutional if passed in the exercise of powers delegated by the people to the federal legislature; i. e., to accomplish an end which that body has a right to seek, provided the means be used in good faith, and be appropriate to the end; even though the effect—not the purpose—of the statute be to change or abrogate the written

or unwritten code of a State, or the rules and course of procedure of its courts, whether relating to the admission of evidence or to some other subject. *Hepburn* v. *Griswold*, 8 Wallace, 603, 614, *et seq.*; 2 Story on Const., §§ 1236 to 1259.

The only reply attempted is that, if the power to tax State processes be conceded, it may be so exercised as to destroy the instrumentalities of the State governments; that they may be taxed out of existence. *Warren* v. *Paul*, 22 Ind., 279; *Jones* v. *Keep*, 19 Wisc., 369; *Fifield* v. *Close*, 15 Mich., 509; Cooley's Const. Lim., 483, *et seq.*, *notisque*. A resort to any such measures would be evidently neither necessary nor proper, nor "*bona fide* and appropriate to the end;" and hence not warranted by the constitution. Judge Story fully answered this argument from inconvenience, forty years ago, in reply to the claims of those strict constructionists who would so tie up the powers and resources of the government as to leave it helpless, at the mercy of its enemies. See Story on the Constitution, §§ 425 *et seq.* and 939 *et seq.*

The congress of the United States, representing all the people, who can change its composition and send members reflecting their views at any time, must be trusted not to destroy the State governments. As to them, it is, measurably, "a case of confidence." *M'Culloch* v. *Maryland*, 4 Wheat., 431.

The supreme court of the United States, without deciding the point here raised, have given an intimation of opinion in *Pugh* v. *McCormick*, 14 Wallace, 361; and *Campbell* v. *Wilcox* does not even intimate that an unstamped note should be received in evidence.

III. This case is not even brought within the exceptions of the act in force when it was executed. It does not appear that the omission to stamp was unintentional on the part of Mr. Emery, who was as much bound to see that it was stamped as Mr. Hobson was; and, as he did not show the contrary, the fair presumption is that he did intentionally omit to have the stamp affixed. So held in *Howe* v. *Carpenter*, 53 Barb., 382.

·Every man is presumed to intend the natural—not to say, the inevitable—consequence of his acts.

A failure to stamp an instrument, in the haste of making, may be accidental ; but to keep it for years, entirely ignoring the stamp-law and the provisions for remedying an omission, to put it in suit and in evidence without stamping it ; evinces clearly the plaintiff's purpose that the United States shall not be paid the tax by its laws imposed on this document. Though Joseph Hobson might have no intention to defraud the revenue, it does not follow that Mr. Emery has no such intention, since the contrary is the inevitable result of his acts.

*William L. Putnam*, for the plaintiff.

An omission to stamp, being without fraudulent intent, has been decided, both in this State and in the U. S. Supreme Court, not to impair the validity of an instrument. *Campbell* v. *Wilcox*, 10 Wallace, 421.

The provision of the U. S. Statute that unstamped instruments shall not be used as evidence in any court has been restricted to U. S. Courts, in Massachusetts and many other States. *Carpenter* v. *Snelling*, 97 Mass., 452 ; *Green* v. *Holway*, 101 Mass., 243, and cases there cited ; *Clemens* v. *Conrad*, 19 Mich., 170 ; *Griffin* v. *Rumery*, 35 Conn., 239 ; *People* v. *Gates*, 43 N. Y., 40 ; *Spooner* v. *Gifler*, 1 Heisk., 633 ; *Davis* v. *Richardson*, 45 Miss., 499 ; *Bumpa* v. *Taggart*, 26 Ark., 398 ; *Duffey* v. *Hobson*, 40 Cal., 240 ; *Daily* v. *Coker*, 33 Texas, 815 ; *Wallace* v. *Craven*, 34 Ind., 534.

The reasons governing the majority of the above courts are, in the main, two.

First. It is conceded that if there is no fraudulent intent, the unstamped instrument is valid. Now being valid, it is urged the exclusion of it is a mere regulation of evidence, which congress cannot impose on the State courts.

Second. By the rule of construction given in *Green* v. *Holway, ante*, p. 249, the statute does not include the State courts.

With such a multitude of cases, it would seem irksome to discuss the questions involved. We think our court must yield to such preponderating weight of authority.

In *Moore* v. *Quirk*, 105 Mass., 49, it was held that the whole of the provision of the U. S. Statute in question, including that relative to recording, had no application to State officials. It is not easy to explain *Sawyer* v. *Parker*, 57 Maine, 39, and *Brown* v. *Thompson*, 59 Maine, 372, on any other principle of construction. We therefore claim that the question has already been settled in our favor.

*Leavitt* v. *Leavitt*, 4 Maine, 161, is subject to the same observations as were made upon the case in Johnson's Reports in *Green* v. *Holway, ante*.

By the stamp act promissory notes include memoranda, checks, receipts, and other written or printed evidence of an amount of money to be paid on demand. Stamps on mere receipts were not required after October 1, 1870. U. S. Stats. 1870, c. 255, § 4. This paper is dated October 3, 1870, and we claim is a mere receipt.

The paper contains no promise to pay, and no language that imports anything except an obligation to credit the amount to plaintiff. Whether defendant would ultimately owe the amount and be compelled to pay it would depend on other evidence, and perhaps on an examination of mutual accounts.

RESCRIPT.

This is an action of assumpsit on an unstamped written instrument of the tenor following :

"$1,321 77-100                      PORTLAND, Oct. 3, 1870.

Received of Daniel F. Emery, thirteen hundred and twenty-one dollars and seventy-seven cents on account, with interest at the rate of twelve per cent.                      JOSEPH HOBSON."

To the admission of this instrument in evidence the defendant seasonably objected upon the ground that it was not stamped as required by the Acts of Congress of the United States. The

plaintiff testified that the omission to stamp was with no intent upon his part to defraud the revenue, nor with any other fraudulent intent on his part. The instrument was properly admitted.

Note by the reporter. Since the foregoing rescript was sent down the case of *Moore* v. *Mason* taken before the U. S. Supreme Court by writ of error to the supreme court of Maine, raising the identical question here discussed, has been argued before the supreme court at Washington, at its October term, 1873, after the death of Chief Justice Chase and before his successor was appointed, and the eight associate justices were equally divided in opinion, so the matter is still left open for determination in the ultimate tribunal.